UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHAWN BRENT, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:22-cv-01921-JPH-MG |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**ORDER ON MOTION FOR RELIEF UNDER 28 U.S.C. § 2255**

Shawn Brent pled guilty to conspiring to distribute 50 grams or more of methamphetamine and was sentenced to 210 months' imprisonment. Mr. Brent asks the Court to vacate his guilty plea and sentence pursuant to 28 U.S.C. § 2255, arguing that he was deprived of his constitutional right to effective assistance of counsel. For the reasons that follow, the motion is **denied**, except for his claim that his counsel failed to file a notice of appeal despite his instructions to do so.

**II.
Background**

A grand jury indicted Mr. Brent on three methamphetamine-related charges and one count of possessing a firearm as a convicted felon. Crim. dkt.[1] 1-2. The Court appointed James Edgar to represent Mr. Brent. Crim. dkt. 38.

---

[1] *United States v. Watters*, No. 1:20-cr-00318-JPH-TAB-2.

### A. Plea Agreement

Mr. Brent petitioned the Court to plead guilty pursuant to a plea agreement. Crim. dkt. 46. In it, Mr. Brent agreed to plead guilty to one count of conspiring to possess with intent to distribute and to distribute 50 grams or more of methamphetamine. *Id.* at ¶ 1. Mr. Brent also waived his right to appeal the conviction and sentence imposed. *Id.* at ¶ 20. For purposes of calculating the advisory Guidelines' range, Mr. Brent stipulated to a base offense level 36 based on the quantity of controlled substances and a two-level increase for possession of a firearm. *Id.* at ¶ 19.

In exchange, the government agreed to dismiss the remaining counts: two additional drug charges (carrying ten-year minimum sentences) and one felon-in-possession charge (carrying ten-year maximum sentences). *Id.* at ¶ 2; *see* 18 U.S.C. § 924(a)(2) (eff. Dec. 21, 2018–June 24, 2022); 21 U.S.C. § 841(b)(1)(A)(viii) (eff. Dec. 21, 2018–Dec. 1, 2022). The government stipulated that Mr. Brent was entitled to a three-level acceptance-of-responsibility reduction, and agreed to recommend a sentence no higher than the top of the advisory Sentencing Guidelines range. *Id.* at ¶¶ 10, 19.

Mr. Brent stipulated to the following facts:

- Officers seized four pounds of methamphetamine, two ounces of heroin, a drug press, a rifle, and a handgun from his residence.
- He personally distributed a total of 157.24 grams of methamphetamine in two separate transactions.
- He conspired with another person to distribute methamphetamine.

- The conspiracy involved the distribution of at least 1,550 grams of methamphetamine readily foreseeable to Mr. Brent.

*Id.* at ¶ 15.

In his plea agreement, Mr. Brent acknowledged that he was waiving his rights to:

- a jury trial;
- be represented by counsel;
- present testimony, evidence, and witnesses;
- compel witnesses to appear, if necessary;
- confront and cross-examine witnesses; and
- appeal any conviction or sentence.

Crim. dkt. 46 at ¶ 9. He further acknowledged that Mr. Edgar:

- informed, counseled, and advised him as to the nature and cause of every accusation and possible defense;
- discussed the plea agreement with him;
- represented him satisfactorily; and
- did "all that anyone could to do to counsel and assist" him.

*Id.* at ¶ 25.

### B. Change of plea and sentencing hearing

At the start of the combined change of plea and sentencing hearing, the Court told Mr. Brent to speak up if there was anything covered during the hearing he did not understand, and that he could have a break anytime during the hearing to speak privately with Mr. Edgar. Crim. dkt. 80 at 4:9–15. Mr. Brent confirmed that he was "fully satisfied with the counsel, representation, and advice" Mr. Edgar provided him. *Id.* at 4:16–20. He also confirmed that he

3

read the entire plea agreement, had an opportunity to review it with Mr. Edgar, and was pleading guilty freely because he was in fact guilty. *Id.* at 5:2–22.

The Court notified Mr. Brent of his constitutional rights, including the right to a jury trial, to be presumed innocent, to representation by counsel, to confront and cross-examine witnesses, to present evidence and compel the attendance of witnesses, and to avoid self-incrimination. *Id.* at 7:21–8:22. Mr. Brent acknowledged that he understood he had those rights and further acknowledged his understanding that by entering a guilty plea, he would be waiving those rights. *Id.* at 8:23–9:9. He also confirmed that he had read the stipulated factual basis and that the facts set forth in it were accurate and true. *Id.* at 9:10–22. The Court reviewed Mr. Brent's appeal waiver, and Mr. Brent confirmed on the record that he had discussed the waiver provisions with his attorney and understood what the waiver provisions meant. *Id.* at 11:15–13:14.

The Court accepted Mr. Brent's plea of guilty to one count of conspiring to possess with intent to distribute and to distribute 50 grams or more of methamphetamine. *Id.* at 13:17–14:6.

During the sentencing phase, the Court calculated an advisory Guidelines range of 210–262 months' imprisonment. Crim. dkt. 80 at 18:8–13. The Court sentenced Mr. Brent to 210 months' imprisonment. *Id.* at 31:17–32:6.

# III.
# Applicable Law

## A. 28 U.S.C. § 2255

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## B. Ineffective assistance of counsel

A § 2255 movant claiming ineffective assistance bears the burden of showing (1) that counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021). If a petitioner cannot establish

5

one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

To assess counsel's performance, the Court must "apply an objective standard of reasonableness considering all the circumstances." *Bridges v. United States*, 991 F.3d 793, 803 (7th Cir. 2021). On the prejudice prong, a petitioner "must show that but for counsel's errors, there is a reasonable probability that the result would have been different." *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (internal quotations omitted); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (A petitioner who has pled guilty can establish prejudice only by demonstrating "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). The petitioner cannot meet this standard with a "mere allegation" but must show a reasonable probability that he would have stood trial with "objective evidence." *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005); *see also Lee v. United States*, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.").

### IV.
### Analysis

Mr. Brent argues that his 6th Amendment right to counsel was violated because counsel (1) was ineffective with respect to the plea agreement and

change of plea process; (2) was ineffective with respect to sentencing; and (3) did not file a notice of appeal, despite Mr. Brent's instructions for him to do so.

### A.     Plea agreement and change of plea

Mr. Brent argues that counsel's performance was deficient because he did not: (1) inform Mr. Brent of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial; (2) file any substantive pretrial motions; (3) conduct an adequate and independent pretrial investigation; or (4) attempt to negotiate a favorable plea agreement. Mr. Brent argues that he was prejudiced because he did not fully understand his right to go to trial and the consequences of pleading guilty, so his guilty plea was not knowing and voluntary. The government responds that these arguments are directly contradicted by statements that Mr. Brent made under oath at his plea and sentencing hearing and therefore foreclosed. Dkt. 15 at 16–18.

A guilty plea "cannot be 'knowing and voluntary' if it resulted from ineffective assistance of counsel." *Hurlow v. United States*, 726 F.3d 958, 967 (7th Cir. 2013). In the context of plea bargaining, to show that counsel's performance was deficient a petitioner must show that counsel's representation "fell below an objective standard of reasonableness." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). To show prejudice, the petitioner must show that "the outcome of the plea process would have been different with competent advice." *Id.* at 163. The petitioner must show prejudice "by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

7

would have insisted on going to trial." *Lee v. United States*, 582 U.S. 357 (2017) (citations omitted).

### 1. Performance

Mr. Brent argues that Mr. Edgar failed to inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial. In support of this argument, Mr. Brent states that he "advised Edgar that he felt like he would win his case." *Id.* at 11. In response, counsel advised Mr. Brent "that [counsel] just recently assisted another client" who faced the same charges, went to trial, and received a life sentence. Dkt. 10 at 11. Mr. Edgar's anecdote "brought fear" to Mr. Brent because he perceived Mr. Edgar's story as an effort to "indirectly urge" him to plead guilty. *Id.*

But Mr. Brent testified under oath during his plea hearing that nobody attempted to force him to plead guilty and that he was pleading guilty voluntarily because he was, in fact, guilty. Crim. dkt. 80 at 5:16–22. Mr. Brent offers no reason for the Court to find that his sworn testimony at the change of plea hearing wasn't true, and to credit his after-the-fact version of events over his sworn testimony. Moreover, Mr. Brent does not provide any facts supporting his claims that he was confident that he would win his case. On the contrary, in the factual basis in support of the guilty plea, Mr. Brent admitted to having "four pounds of methamphetamine, two ounces of heroin, a drug press, a rifle, and a handgun" at his residence. Crim. Dkt. 46 at 6.

Mr. Brent states that he "was not fairly apprised of the consequences of his decision to plead guilty." Dkt. 10 at 17. But the consequences were spelled

8

out in the plea agreement that Mr. Brent signed, and then recited by the Court during the change of plea hearing.  Crim. dkt. 46; crim. dkt. 80 at 7:21–9:9, 10:24–13:5, 15:4–10, 15:19–16:3.  Moreover, Mr. Brent testified during the hearing that he discussed those consequences with Mr. Edgar, understood them, and still wished to plead guilty.  Crim. dkt. 80 at 5:5–8, 10:24–11:2, 11:25–12:22, 15:8–13, 16:6–16.  Again, Mr. Brent offers no reason for the Court to find that his sworn testimony at the change of plea hearing wasn't true.

"[R]epresentations made to a court during a plea colloquy are presumed to be true." *Hurlow*, 726 F.3d at 968 (citation and internal quotation marks omitted).  Mr. Brent offers no reason that would support setting his sworn statements aside. Therefore, Mr. Brent is precluded from now arguing that his guilty plea was not made knowingly and voluntarily and instead the result of deficient performance by counsel.

Mr. Brent next argues that counsel's performance was deficient because he did not file any substantive pretrial motions.  He does not, however, identify the subject matter and substance of any motions that Mr. Edgar should have filed on his behalf.  Mr. Brent has therefore not shown counsel's performance was deficient because he did not file substantive pretrial motions.  *See Long v. United States*, 847 F.3d 916, 920-21 (7th Cir. 2017) (ineffective assistance of counsel claim where counsel did not file a motion to suppress fails where petitioner "alleged no facts suggesting that the motion would have succeeded").

9

Mr. Brent further argues that counsel's performance was deficient because he did not conduct an adequate and independent pretrial investigation. Dkt. 10 at 12. "[T]he Constitution requires an attorney to make a 'reasonable' investigation." *Long*, 847 F.3d at 922 (citing *Strickland*, 466 U.S. at 691). If the petitioner can demonstrate that counsel's investigation was unreasonable, the focus turns to "what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result." *U.S. ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987).

Here, Mr. Brent does not identify what favorable evidence Mr. Edgar could have uncovered through an investigation. In order to show ineffective assistance of counsel from a failure to investigate, Mr. Brent must "make a comprehensive showing of what the investigation would have produced." *Granada v. United States*, 51 F.3d 82, 85 (7th Cir. 1995) (internal quotation omitted). Specifically, he must show "that evidence uncovered during that investigation would have led the attorney to change [his] recommendation to accept the plea offer." *Warren v. Baenen*, 712 F.3d 1090, 1097 (7th Cir. 2013). Mr. Brent states he "suggested to [Mr. Edgar] that the body cam evidence in this case would prove Brent's innocence," dkt. 10 at 16, but does not explain what the evidence would have shown or how it would have benefitted him at trial. Mr. Brent explains that "the authority" (presumably law enforcement) stated that Mr. Brent smoked during the search incident to arrest and the body cam would show otherwise. Dkt. 10 at 12. But he does not connect how this

10

would have aided his defense or make a potentially meritorious argument explaining how that discrepancy, if true, would have discredited "the authority."  He further argues that although Mr. Brent had been "under investigation since 2019 about drug dealing . . . he had never done any drug-related activities and Edgar failed to raise that in Court."  *Id.*

Mr. Brent offers no explanation, however, that squares those statements with his statement under oath during the plea colloquy affirming as accurate and true the facts set forth in the stipulated factual basis—that he conspired with another person to deal methamphetamine, that he personally distributed over 150 grams, and that four pounds of methamphetamine and two guns were seized from his home.  Crim. dkt. 80 at 9:10–22; Crim dkt. 46 at ¶ 15.  Considering these admissions under oath, Mr. Brent has not shown that counsel was deficient for not having conducted further investigation.

Last, Mr. Brent argues that counsel's performance was deficient because he did not attempt to negotiate a favorable plea agreement.  But he does not explain what more favorable terms counsel should have secured for him or identify facts would have supported such an outcome.  *See Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (petitioner failed to meet his burden to establish his counsel's failure to negotiate a plea agreement constituted deficient performance).

### 2. Prejudice

Mr. Brent argues "[i]f not for Edgar's erroneous assessment of Brent's inaccurate judgment of records and incorrect advice, Brent would have opted

11

to plead guilty without the Plea Agreement to reserve his right to appeal." Dkt. 10 at 16. He does not, however, identify any potentially meritorious issue—or any issue for that matter—that he was precluded from bringing because of the plea agreement.

Mr. Brent further argues that he was prejudiced by being sentenced to a term of 210 months' imprisonment. Dkt. 10 at 17. Mr. Brent has not shown "a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee*, 582 U.S. 357. On the contrary, the record demonstrates that Mr. Brent admitted the facts that supported his guilty plea and corresponding sentence.

**B. Sentencing**

Mr. Brent argues that counsel was ineffective during sentencing for failing to object to (1) the drug quantity attributed to Mr. Brent and the resulting base offense level, and (2) the two-level firearm enhancement in the PSR.

Mr. Brent contends that Mr. Edgar should have raised both objections, and that he would have received a lower sentence if Mr. Edgar had done so. In response, the government argues that both the drug quantity and base offense level calculation, and the firearm enhancement, were legally correct, and that Mr. Brent cannot show either deficient performance or prejudice at sentencing. Furthermore, Mr. Brent stipulated to both the guidelines calculations and the underlying factual bases in the plea agreement and in open court. Dkt. 15 at 21-26.

12

### 1. Performance

Mr. Brent first argues that Mr. Edgar erred by failing to challenge the determination that he was foreseeably responsible for distributing at least 1,550 grams of methamphetamine. Dkt. 10 at 20. Mr. Brent was charged with conspiring to possess with intent to distribute 50 grams or more of methamphetamine. Crim. dkt. 1. He argues that his sentencing guidelines should have been calculated as though he had at least 50 grams but less than 200 grams of methamphetamine, resulting in a base offense level of 24 pursuant to § 2D1.1 of the Sentencing Guidelines. Dkt. 10 at 20. Instead, Mr. Brent's sentencing guidelines range was calculated based on a base offense level of 36, corresponding to the full 1550-gram amount as described in the plea agreement. Crim. dkt. 46 at 6; crim. dkt. 54 at 4 ¶ 13.

"In a drug conspiracy, each conspirator is responsible for both the drug quantities directly attributable to him, and amounts involved in reasonably foreseeable dealings by co-conspirators." *United States v. Gibson*, 996 F.3d 451, 464 (7th Cir. 2021) (internal quotation omitted). Mr. Brent sold a total of 157.24 grams of methamphetamine in two different transactions, and officers seized four pounds of methamphetamine from his residence. Crim. dkt. 46 at 5-6 ¶¶ 15. Mr. Brent stipulated to this drug quantity in his plea agreement and then affirmed it in open court. Crim. dkt. 46 at ¶ 15(c); crim. dkt. 80 at 9:10–22. Mr. Brent also stipulated to a base offense level of 36, which is the appropriate base level for that quantity of methamphetamine. Crim. dkt. 46, § 19(a).

13

Given those facts, distribution of at least 1,550 grams of methamphetamine was reasonably foreseeable to Mr. Brent. Mr. Edgar did not perform deficiently by not objecting to the drug quantity attributed to Mr. Brent, the resulting base offense level, or the sentencing guidelines range. Moreover, Mr. Edgar could not challenge the calculation at sentencing without undoing the entire plea agreement.

As to the two-level firearm enhancement, Mr. Brent argues that Mr. Edgar should have challenged the application of the enhancement, as "the government already dismissed the gun charge against Brent," dkt. 10 at 21–22, and Mr. Brent's possession and use of the guns had not been proven beyond a reasonable doubt, dkt. 10 at 22.

Neither of those arguments provide legal grounds for Mr. Edgar to have objected to the enhancement. The application notes to the Sentencing Guidelines explain that the "enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment (n.11(A)). There is no requirement that the possession of a firearm is proven beyond a reasonable doubt in order for the enhancement to apply, or that the government must bring a separate gun charge at all. Here, the government agreed to dismiss the felon-in-possession charge as part of the plea agreement—after Mr. Brent was sentenced for the drug conspiracy charge, not before. In the plea agreement, Mr. Brent stipulated that he possessed two firearms at his residence along with

four pounds of methamphetamine, and that he was subject to the two-level enhancement. Crim. dkt. 46 at ¶¶ 2, 15, 19.

Mr. Brent has not provided any legal reason for Mr. Edgar to have objected to the application of the enhancement. And, regardless, Mr. Brent's admission to possessing the guns in his home with a large quantity of methamphetamine foreclosed such a challenge. As "an attorney is not ineffective for failing to raise a meritless argument," Mr. Brent cannot show that Mr. Edgar performed deficiently by not raising a meritless objection. *Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018) (citing *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996)). And, as with the objection to the drug quantity and base offense level calculation, Mr. Edgar could not oppose the enhancement without undoing the plea agreement.

### 2. Prejudice

Mr. Brent argues that he was prejudiced because if Mr. Edgar had "been prepared, properly argued PSR objections, and argued for mitigation of his sentence," he may have received a lower sentence. Dkt. 10 at 22. As explained above, Mr. Edgar was not deficient in not raising objections regarding the drug quantity or firearm enhancement in the PSR, and so Mr. Brent cannot be prejudiced on those grounds. Nor does Mr. Brent explain how Mr. Edgar was unprepared, or how his lack of preparation would have changed Mr. Brent's decision to plead guilty or affected the outcome. Likewise, Mr. Brent does not identify what Mr. Edgar should have done differently in making a mitigation

15

argument during sentencing, or how his sentence would have been different as a result.

In sum, Mr. Brent has not shown deficient performance or prejudice, or that his counsel was ineffective during sentencing.

Finally, Mr. Brent alleges that Mr. Edgar failed to "correctly inform Brent of the likely consequences and hurdles that he faced if he pled guilty or proceeded to trial." Dkt. 10 at 17. But he does not state what consequences Mr. Edgar misrepresented or failed to address, much less why he would have proceeded to trial if he received a different assessment. Likewise, Mr. Brent alleges that Mr. Edgar misrepresented material facts, dkt. 10 at 17, but he does not say what those facts are, how Mr. Edgar misrepresented them, or how those misrepresentations enticed him to plead guilty. *See Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (the petitioner has the burden to show that but for the counsel's errors, there is a reasonable probability that the result would have been different and the petitioner would have proceeded to trial rather than plead guilty).

    **C.**    **Failure to File Notice of Appeal**

When "a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions." *Garza v. Idaho*, 586 U.S. 232, 241 (2019). When this deprives the defendant of an appeal that he otherwise would have taken, he has been prejudiced, regardless of the merits of any appellate issue or whether the defendant agreed to waive his right to

16

appeal. *Id.* at 242. In such a case, the defendant is entitled to file a notice of appeal. *Id.* at 247.

In an affidavit filed with his reply, Mr. Brent attests that he asked Mr. Edgar to "initiate the appeals process" after his plea and sentencing hearing. Dkt. 17 at 5. No notice of appeal was ever filed. The government initially opposed this claim without a hearing on grounds that Mr. Brent's allegations regarding notice of appeal were unsworn, or alternatively that an evidentiary hearing may be necessary to resolve the limited question of whether Mr. Brent expressly requested an appeal. Dkt. 15 at 26–27. The government further stated that it had contacted Mr. Edgar to inquire about an affidavit as to whether Mr. Brent had requested that he file an appeal, but that Mr. Edgar declined, invoking attorney-client privilege. *Id.* Mr. Brent has since supported his allegations with an affidavit. Dkt. 17 at 5. The undisputed evidence currently before the Court is that Mr. Brent asked Mr. Edgar file an appeal, and Mr. Edgar did not do so. Based on these facts, Mr. Brent would be entitled to relief on his claim of ineffective assistance of counsel with respect to counsel's failure to file the notice of appeal. *Garza*, 586 U.S. at 241, *see also White v. United States*, 2021 WL 2936419 at *1-2 (S.D. Ind. July 12, 2021) (granting habeas relief for ineffective assistance of counsel and directing the clerk to file a notice of appeal when the undisputed evidence showed that the petitioner had requested counsel file an appeal on his behalf, and his counsel had not done so).

Given Mr. Brent's affidavit, and the government's assertion that Mr. Edgar invoked attorney-client privilege on this matter, it is unclear what could be resolved in an evidentiary hearing, if one were to be held.  Therefore, the government has until **November 22, 2024** to **SHOW CAUSE** as to why either an evidentiary hearing should be held, or why Mr. Brent is not entitled to habeas relief on his notice of appeal claim only.

### IV. Conclusion

Mr. Brent raises numerous challenges to his conviction and sentence. None have merit, other than whether Mr. Brent asked Mr. Edgar to file a notice of appeal.  The government **SHALL SHOW CAUSE** by **November 22, 2024** as to why either an evidentiary hearing should be held, or why Mr. Brent is not entitled to habeas relief on that claim only.  The § 2255 motion is **DENIED** as to any other grounds for relief.

The Indiana Federal Community Defender (IFCD) is appointed pursuant to 18 U.S.C. § 3006A to represent Petitioner in this case.  The **IFCD shall have seven days** from the date this Entry is docketed, in which to appear in this action.  Should the IFCD be unable to represent the petitioner, substitute Criminal Justice Act counsel may seek leave to appear on his behalf pursuant to 18 U.S.C. § 3006A(a)(2)(B).

**SO ORDERED.**

Date: 10/24/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

SHAWN BRENT
20460-509
ASHLAND - FCI
ASHLAND FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 6001
ASHLAND, KY 41105

All electronically registered counsel